**A & W EQUIPMENT COMPANY, Inc.,**
**Appellant,**

**v.**

**Charlie CARROLL et al., Appellees.**

Court of Appeals of Kentucky.

March 13, 1964.

Rehearing Denied May 15, 1964.

Logan E. Patterson, Robert B. Berger, Pineville, for appellant.

William S. Tribell, Thomas Z. Board, Middlesboro, John B. Breckinridge, Atty. Gen., William Lamkin, Jr., Asst. Atty. Gen., Frankfort, Phillip K. Wicker, Asst. Atty. Gen., Somerset, for appellees.

STEWART, Judge.

This is an appeal from a judgment of the Bell Circuit Court decreeing invalid a contract entered into between A & W Equipment Company, Inc., appellant herein, and the Bell County Fiscal Court, for the purchase of two road graders.

The trial court found the following facts:

On July 15, 1961, the Bell County Fiscal Court (hereinafter referred to as "the Fiscal Court") authorized advertisement for bids for the purchase of two motor graders under a rental-with-option-to-purchase plan (hereinafter referred to as "the contract"). The advertisement was placed in the Middlesboro Daily News, a daily newspaper of general circulation in Bell County.

On August 18, 1961, Brandeis Machinery and Supply Company submitted a bid of $30,530. On the same date, appellant tendered a bid of $38,286.50. No other bids were received. On September 16, 1961,

appellant's bid was accepted and approved by the Fiscal Court.

On September 27, 1961, appellant filed articles of incorporation with the Secretary of State and copies thereof were filed on September 28, 1961, with the Bell County Court Clerk. On November 8, 1961, the contract was signed by Edward M. Dooley on behalf of appellant; and on November 10, 1961, it was signed by the Bell county judge. A contract with the Department of Highways was subsequently executed, by the terms of which the equipment was leased by the county to the state under an arrangement which would service the debt incurred.

On November 14, 1961, after the two graders had been delivered but before any payment had been made, Charlie Carroll and Charlie Hoskins, appellees herein, filed this action as taxpayers to invalidate the contract. That day the trial court issued an order restraining the Fiscal Court from proceeding with the contract until further orders were issued by it. On November 24, 1961, appellant filed answer and cross-claim, seeking a declaration of rights and the enforcement of its contract with the Fiscal Court. On December 15, 1961, while the restraining order was in full force and effect, the Fiscal Court attempted to ratify the contract with appellant.

The trial court also found as a fact that appellant was not an existing corporation when its bid was submitted, accepted and approved. The court further found that Edward M. Dooley, at the time he signed the contract, was not an officer of the corporation.

The trial court concluded:

1. The fact that appellant was not incorporated, that is, not in legal existence, at the time its bid was submitted and at the time of the acceptance of the bid, rendered the proceeding illegal and void.

2. The later attempted ratification of the contract, being in violation of the restraining order, did not have the effect of ratifying it or making it binding.

3. The contract was not binding because it was not signed by an official of the A & W Equipment Company who had the power to obligate it.

It is appellant's position that the mere fact it was not incorporated and thus not in being when the bid was made in its behalf and accepted by the Fiscal Court does not render the entire proceeding either illegal or void, as was decreed by the trial court. We believe this position is well taken.

■ There is no evidence to indicate whether the Fiscal Court knew appellant was nonexistent when the bid was made and accepted. If it is presumed the Fiscal Court did not have such knowledge, then the whole transaction was merely voidable at the instance of the misled party. Where one makes an agreement with another under a mistake as to the other's identity, the contract is neither void nor voidable, unless identity was a material inducement in the making of the contract. See 12 Am.Jur., Contracts, Sec. 134, p. 626, Annotation, 147 A.L.R. 1171 et seq.

■ Here the actual contract was executed and fully carried out by appellant *after* appellant was incorporated. Such acts amount to a ratification of the transaction by appellant. In 2 Fletcher, Cyc.Corp. (Perm. Ed.) Sec. 752, pp. 1057–58, it is stated:

"If the officers or the agents of a corporation assume to act for the corporation without any authority at all, or if they exceed their authority or act irregularly, and the act is one which could have been authorized in the first instance by the stockholders, board of directors or subordinate officers, as the case may be, it may be expressly or impliedly ratified by them, thus be rendered just as binding except as to intervening rights of third persons, as if it had been authorized when done, or done regularly."

See also Catlettsburg & Buchanan Tel. Co. v. Bond, 262 Ky. 106, 89 S.W.2d 859.

■ The trial court's ruling that the contract was illegal, because it was not signed by an official of the corporation who had the authority to obligate it, is subject to the same answer as the one given to the contention that a bid could not be accepted when submitted from a nonentity; namely, the contract was duly ratified after the corporation became a reality. The performance of the contract by appellant by delivery of the equipment showed appellant ratified the contract and believed that it was bound by the terms thereof. In 13 Am. Jur., Corporations, Sec. 929, p. 929, it is said: "It is the view generally taken that a third person dealing with the officer or agent of a corporation, cannot, after the corporation has ratified the transaction, object on the ground that the officer or agent was unauthorized at the time of the transaction."

The Fiscal Court effectively ratified the contract by accepting delivery of the equipment. Such acceptance was in fact accomplished before this action was filed and the restraining order was issued. However, the Fiscal Court did not try to avoid the contract but, on the contrary, repeatedly demonstrated its willingness to perform under it.

■ The Fiscal Court had the authority to buy the two road graders. See KRS 179.-170(1), KRS 179.180. According to such cases as Taylor v. Riney, 156 Ky. 393, 161 S.W. 203, and Commonwealth v. Fayette County, 239 Ky. 485, 39 S.W.2d 962, the Fiscal Court was invested with broad discretion in consummating deals of this type; and the courts will not interfere with this discretion unless there is a clear showing of abuse amounting to fraud or action indicating arbitrariness or capriciousness. See Ford v. County of Carlisle, Ky., 361 S.W.2d 757.

If, with knowledge of all the facts, the Fiscal Court was anxious and willing to honor and carry out its contract, and retain the benefit of full performance thereunder by appellant, it does not appear to be in the interest of the county for two interloping volunteers, under the guise of public-spirited piety, to substitute their judgment for that of the Fiscal Court.

■■ In this case, the Fiscal Court received two bids and accepted the higher one. The trial court held that, because Brandeis Machinery Company made a bid that was low by $7756.50 and because there was no competent evidence to show that the Brandeis equipment would not satisfactorily perform the services required of it, the Fiscal Court should have accepted the lower bid. This conclusion by the trial court is based upon an untenable premise, namely, that the naked fact of a lower bid cast upon the Fiscal Court the burden of justifying its acceptance of a higher bid. This is not the proper rule of law. In Taylor v. Riney, 156 Ky. 393, 161 S.W. 203, this Court made it clear that in situations like the present "the fiscal court is invested with a large measure of discretion, and under ordinary circumstances this discretion will not be controlled by the courts, as it is to be presumed that the fiscal court will act in the discharge of matters under its care in such a manner as to best conserve the interests of the county." We believe the Fiscal Court is entitled to a presumption that the bid accepted by it was the "best" bid, though it may not have been the lowest, and that the burden of proving otherwise falls on the contesting party or parties.

As a parting shot the trial court suggested that the contract may have been illegal and void because a member of the county budget commission was also a stockholder and officer of appellant. Gaines Williamson, the appointive member of the county budget commission, also is president of appellant corporation and the owner of 18% of its stock. The trial court apparently felt that his act done while retaining the above

position violated KRS 61.190, which in part reads:

"Any public officer who shall receive, directly or indirectly, any interest, profits or perquisites arising from the use or loan of public funds in his hands, or to be raised through his agency, shall be punished by confinement in the penitentiary for not less than one nor more than five years. * * *"

This statutory provision implements Section 173 of the Constitution of Kentucky. KRS 68.230 sets out the qualifications for the appointive member of the county budget commission, but there is no statutory provision for the payment of any compensation to its members.

■ The commission to which Williamson was appointed does not "raise" any money, nor does it disburse or participate in the spending of public funds. The commission formulates an estimate of funds needed by the various units of county government and an estimate of anticipated county receipts. The budget so prepared must be approved by the state Local Finance Officer before it can be adopted by the Fiscal Court. It is obvious that Williamson, in the performance of his duties, does not "receive * * * any profits * * * arising from the use * * * of public funds in his hands, or to be raised through his agency * * *."

■ We therefore, conclude the provisions of KRS 61.190 do not extend to an appointive member of the county budget commission.

For the reasons set forth, we hold that the contract in controversy is a valid and binding agreement, and the trial court is directed to order the Fiscal Court to perform it in accordance with its terms and conditions to the extent requested by appellant's counterclaim.

Wherefore, the judgment is reversed.