2008-NMCA-057

183 P.3d 940

**ELLEN EQUIPMENT CORPORATION, Plaintiff–Appellee/Cross–Appellant,**

v.

**C.V. CONSULTANTS & ASSOCIATES, INC., Ernie Uzzell and Victoria Uzzell, his wife, and Britt Cowell, and State National Bank, a Texas corporation, Defendants–Appellants/Cross–Appellees.**

No. 27,029.

Court of Appeals of New Mexico.

Feb. 7, 2008.

**56**

Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C., David M. Mirazo, El Paso, TX, for Appellee.

Holt Babington Mynatt P.C., Matthew P. Holt, Las Cruces, NM, for Appellant Britt Cowell.

## OPINION

CASTILLO, Judge.

{1} This appeal turns on the provisions of the New Mexico Uniform Fraudulent Transfer Act (UFTA), NMSA 1978, §§ 56–10–14 to –25 (1989). In relevant part, Section 56–10–18 provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer (1) with actual intent to hinder, delay, or defraud any creditor of the debtor or (2) without receiving a reasonably equivalent value in exchange for the transfer under circumstances set out in the statute. Section 56–10–18. In order for a transfer to be voidable, the creditor must prove either one of the above requirements by clear and convincing evidence. *See First Nat'l Bank in Albuquerque v. Abraham,* 97 N.M. 288, 291–92, 639 P.2d 575, 578–79 (1982).

{2} In the present case, the debtor is C.V. Consultants and Associates, Inc. (C.V. Consultants), the creditor is Ellen Equipment Corporation (Ellen Equipment), and the transferee is Britt Cowell (Cowell). There is no dispute on appeal that C.V. Consultants was insolvent when it transferred a parcel of real property to Cowell. The trial court concluded that Ellen Equipment failed to prove that C.V. Consultants transferred the property with actual intent to hinder, delay, or defraud Ellen Equipment, and we affirm that decision. The trial court was uncertain about the value of the property transferred and as to whether C.V. Consultants received reasonably equivalent value in the exchange, but the court nonetheless concluded that the transfer was voidable under the UFTA. Our review of the record reveals that Ellen Equipment failed to meet its burden of proving that C.V. Consultants did not receive reasonably equivalent value in exchange for the transfer. We therefore reverse the trial court on this issue and remand for entry of judgment consistent with this opinion.

## I. BACKGROUND

{3} At all times material, C.V. Consultants was a foreign corporation whose sole shareholders were Victoria Uzzell, who is the wife of Ernie Uzzell (Uzzell), and Cecilia Villegas, who is the wife of Roger Villegas (Villegas). The two couples were officers and directors of C.V. Consultants. The company located a piece of property in Doña Ana County and wanted to purchase, develop, and resell it. Because C.V. Consultants lacked borrowing power, the company approached Cowell to assist in securing credit. Cowell, Villegas, and Uzzell agreed to the following (First Agreement): (1) Cowell would guarantee a loan so that C.V. Consultants could purchase and develop the property, (2) C.V. Consultants would make all of the payments on the note, and (3) Cowell would receive a one-third share of profits generated by the development project. In January 2001, C.V. Consultants acquired fee simple title to the property. Uzzell, Villegas, and Cowell executed a promissory note for $75,000, in favor of State National Bank (Bank); the note was secured by a mortgage on the property. Although the property was in the name of C.V. Consultants, the parties signed the mortgage in their individual capacities, instead of designating C.V. Consultants as the grantor. Based on the facts at trial, the trial court concluded that the mortgage should be reformed to show C.V. Consultants as the

mortgagor, effective as of March 8, 2001, the date that the parties signed the mortgage. Neither party challenges this conclusion. The note, also signed by the individuals, was not reformed.

{4} C.V. Consultants made payments on the note from March 2001 until October 2002. In October 2002, C.V. Consultants could no longer make the payments. In order to be relieved of the debt on the promissory note, C.V. Consultants came to a second agreement (Second Agreement) with Cowell. He agreed to be solely responsible for payment on the loan, and C.V. Consultants agreed to transfer title to the property to Cowell. C.V. Consultants, Cowell, and Bank released C.V. Consultants from the obligation to pay the note and extinguished any responsibility of Villegas and Uzzell to pay the note. Cowell received the deeds to the property on December 31, 2002, and gave a mortgage on the property to Bank as security. At the time of this agreement, the amount owed on the promissory note was more than $52,000.

{5} Also in October 2002, Ellen Equipment demanded payment from C.V. Consultants for unpaid bills related to the rental of equipment, and Ellen Equipment threatened litigation if the bills were not paid. C.V. Consultants did not pay. Ellen Equipment then sued C.V. Consultants in the County Court of El Paso County, Texas, and on April 3, 2002, obtained a default judgment. Ellen Equipment domesticated the judgment in Doña Ana County on May 12, 2003.

{6} In September 2004, Ellen Equipment filed the present action, alleging that the conveyance of the property from C.V. Consultants to Cowell should be set aside under the UFTA. After a bench trial, the trial court found that the transfer at issue was not made to hinder, delay, or defraud any creditor of C.V. Consultants. The trial court concluded that the conveyance was voidable because C.V. Consultants "may not have received a reasonably equivalent value in exchange for the transfer to Cowell." The court further determined that Ellen Equipment was therefore "entitled to a lien for the amount of its transcript of judgment, subject to the mortgage and liens identified in [preceding paragraphs]." The trial court also concluded that

Cowell, as a good faith transferee, was entitled to a lien on the property to the extent of the monies paid by him to Bank.

{7} On August 9, 2006, the trial court entered a judgment, which (1) set aside the deed from C.V. Consultants to Cowell, (2) reformed the mortgage to show C.V. Consultants as the grantor, (3) awarded a lien on the property to Cowell for the amount that Cowell paid to Bank on the note secured by the mortgage and gave Cowell's lien priority second only to Bank, (4) ordered the property sold to satisfy C.V. Consultants' creditors and established priority for those creditors, (5) established that any person or entity could bid on the property at the sale and particularly that Cowell could bid his lien in lieu of cash, and (6) set a nine-month period of redemption. Ellen Equipment and Cowell cross-appeal the judgment of the trial court.

## II. DISCUSSION

### A. Actual Intent to Hinder, Delay, or Defraud

{8} We begin with Ellen Equipment's challenge to the trial court's finding that "[t]he transfer of the property from C.V. Consultants to [Cowell] was not made with the actual intent to hinder, delay or defraud any creditor of C.V. Consultants." We review a trial court's findings of fact for substantial evidence. *See Chavarria v. Fleetwood Retail Corp.*, 2006–NMSC–046, ¶ 12, 140 N.M. 478, 143 P.3d 717. We have "defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Elec. Distribs., Inc. v. Santa Fe Hotel Group, LLC*, 2006–NMCA–005, ¶ 12, 138 N.M. 781, 126 P.3d 1145. "[W]e view the facts in the light most favorable to the decision below[, and we] resolve all conflicts and, importantly, indulge in all inferences to support that decision." *Id.* ¶ 7 (alteration in original) (internal quotation marks and citation omitted).

{9} To determine whether there was actual intent, courts may consider a number of factors, often called "badges of fraud," *Abraham*, 97 N.M. at 292, 639 P.2d at 579, including whether

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Section 56–10–18(B). The statute establishes that the trial court is not required to consider these factors and that they are not exclusive. *Id.* A creditor must establish fraud by clear and convincing evidence and "may establish a prima facie case through proof of badges of fraud." *Abraham,* 97 N.M. at 292, 639 P.2d at 579.

{10} Ellen Equipment avers to this Court that "[t]he uncontradicted evidence at trial establishe[s] ... the following badges of fraud"; then Ellen Equipment lists a series of facts that purportedly demonstrate a number of the factors listed in Section 56–10–18(B). In two instances, Ellen Equipment's characterization of the evidence is not supported by the record. Ellen Equipment states, as uncontradicted evidence, that Cowell was an insider to C.V. Consultants. The trial court specifically found to the contrary. Ellen Equipment also sets forth as established by uncontradicted evidence that the value of the consideration received by C.V. Consultants was not reasonably equivalent to the value of the property. Whether or not Cowell gave reasonably equivalent value for the property is an issue of contention in this appeal, which we discuss in detail below.

{11} We agree that there was uncontradicted evidence supporting some of the badges of fraud: the transfer was made after Ellen Equipment threatened C.V. Consultants with suit, as per Section 56–10–18(B)(4); the property constituted substantially all of C.V. Consultants' assets, as per Section 56–10–18(B)(5); and C.V. Consultants was insolvent at the time the transfer was made, as per Section 56–10–18(B)(9). Importantly, however, there are other badges of fraud outlined in Section 56–10–18(B) for which no evidence was presented. There was no evidence that C.V. Consultants retained possession or control of the property after the transfer. *See* § 56–10–18(B)(2). Nor was there evidence to suggest that C.V. Consultants absconded with or concealed the property or proceeds. *See* § 56–10–18(B)(6), (7).

{12} The badges of fraud outlined in Section 56–10–18(B) are designed to assist the trial court in determining the actual intent of the debtor, not to limit the scope of the inquiry. *See Blood v. Nofzinger,* 162 Ohio App.3d 545, 834 N.E.2d 358, 368 (2005) ("Consideration of actual intent to hinder, delay, or defraud is not limited to the statutory factors. Whether fraudulent intent exists is to be determined based upon the facts and circumstances of each case." (internal quotation marks and citation omitted)). The trial court considered all of the evidence and testimony and determined that "Cowell took the property in good faith" and that the transfer "was not made with the actual intent to hinder, delay or defraud any creditor of C.V. Consultants." We conclude that the evidence was sufficient to support the trial court's findings. *See Chavarria,* 2006–NMSC–046, ¶ 12, 140 N.M. 478, 143 P.3d 717 ("Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." (internal quotation marks and citation omitted)).

## B. Reasonably Equivalent Value

{13} Both Cowell and Ellen Equipment also argue that the trial court erred in its evaluation of the value of the property that was transferred to Cowell. The relevant provision of the UFTA makes a transfer of property by a debtor fraudulent as to the creditor when "the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Section 56–10–19(A). The trial court found, and neither party disputes, that C.V. Consultants was insolvent before the property was transferred to Cowell.

### 1. Ellen Equipment's Arguments

{14} Ellen Equipment bore the burden of proof at trial and was required to prove each element of fraudulent transfer by clear and convincing evidence. *See Abraham*, 97 N.M. at 292, 639 P.2d at 579. To satisfy that burden on the matter of reasonably equivalent value, Ellen Equipment's position below and on appeal is that Cowell gave no value to C.V. Consultants. As support for that position, Ellen Equipment first contends that C.V. Consultants owed nothing on the promissory note and that as a result, there was no liability to be released. This question arose because C.V. Consultants is not the identified debtor on the promissory note. The note was instead signed by Uzzell and Villegas in their individual capacities and by Cowell.

{15} Whether or not C.V. Consultants was liable on the promissory note is a question of fact, and Ellen Equipment must specifically challenge the trial court's finding of fact on the matter in order for this Court to review that finding for substantial evidence. *See* Rule 12–213(A)(4) ("A contention that a verdict, judgment or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument has identified with particularity the fact or facts which are not supported by substantial evidence[.]"). The trial court made a number of findings regarding C.V. Consultants' liability on the note. In particular, the trial court found that "Uzzell and Villegas, in their ca-

pacity as officers and directors of C.V. Consultants[,] agreed that C.V. Consultants would make all the payments to … [B]ank." Other findings refer to this same liability. Ellen Equipment does not challenge these findings with any particularity. Accordingly, we decline to consider whether the findings were supported by substantial evidence, and we deem the findings on the matter to be conclusive. *See Blea v. Fields*, 2005–NMSC–029, ¶ 22, 138 N.M. 348, 120 P.3d 430 ("Because [the p]laintiff did not properly attack specific findings with particularity, the findings will be deemed conclusive.").

{16} Ellen Equipment also maintains that the First Agreement between Cowell and C.V. Consultants was unenforceable under the statute of frauds. The trial court rejected this argument but did not offer an explanation. The application of the statute of frauds raises questions of law, which we review de novo. *See Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 24, 766 P.2d 280, 284 (1988) ("As a general rule, determination of the applicability of the defense of the statute of frauds is a question of law[.]"). We agree with the trial court that the statute of frauds did not bar the First Agreement.

{17} We understand Ellen Equipment's argument on appeal to be that the terms of the note made Cowell liable to Bank and that any obligation of C.V. Consultants to pay on the note had to be in writing or such obligation was not enforceable. Consequently, if the First Agreement were unenforceable, Cowell's original liability on the promissory note would never have been extinguished, and he would have provided no new consideration in return for title on the property.

{18} Cowell responds that the statute of frauds is inapplicable because C.V. Consultants participated in the First Agreement for its own benefit. Our Supreme Court has acknowledged that "it is … undeniable that if the principal purpose of the agreement is to subserve the pecuniary interests of the promisor, the statute of frauds will not apply." *State ex rel. Elec. Supply Co. v. Kitchens Constr., Inc.*, 106 N.M. 753, 755, 750 P.2d 114, 116 (1988). Ellen Equipment does not counter this argument; however, we consider

*Kitchens* to be factually distinct from the present case, and we thus decline to apply this exception to the facts of our case.

{19} Cowell argued to the trial court that performance of an oral agreement by one party abrogates the statute of frauds defense for the other party. Part performance is a well-established exception to the statute of frauds. *See Nashan v. Nashan*, 119 N.M. 625, 629, 894 P.2d 402, 406 (Ct.App.1995). We have explained in the past that "[p]art performance requires that the acts which are relied upon [be] unequivocally referable to the contract." *Herrera v. Herrera*, 1999–NMCA–034, ¶ 11, 126 N.M. 705, 974 P.2d 675 (internal quotation marks and citation omitted). C.V. Consultants performed the First Agreement for more than a year and made payments on the note from March 2001 until October 2002. Cowell made no payments on the note until C.V. Consultants transferred title to the property after the Second Agreement. We determine that these payments on the note made by C.V. Consultants were sufficient part performance to remove the First Agreement from the statute of frauds.

## 2. Cowell's Argument

{20} Cowell maintains that the conveyance to him was not voidable under the UFTA because Ellen Equipment did not meet its burden of proof regarding the value of the property. The trial court made no findings to support a conclusion that C.V. Consultants did not receive a reasonably equivalent value for the property. In fact, the trial court noted the ambiguity surrounding the property's value in the following conclusion of law:

> Evidence regarding the value of the ... [p]roperty when C.V. Consultants transferred it to Cowell is uncertain because an undetermined amount of improvement had been made by C.V. Consultants after purchase. However, ... the [c]ourt finds that the transfer was made in a manner making the transfer voidable under the Uniform Fraudulent Transfer Act, since C.V. Consultants may not have received a reasonably equivalent value in exchange for the transfer to Cowell.

The court's findings of fact support the conclusion that the value of the property was uncertain. However, the quoted conclusion of law impermissibly shifts the burden of proof from Ellen Equipment to Cowell. *See* § 56–10–18; *Abraham*, 97 N.M. at 291–92, 639 P.2d at 578–79 (indicating that the creditor bears the burden of proof in establishing that a fraudulent conveyance took place). The trial court acknowledged that Ellen Equipment failed to establish that C.V. Consultants *did not* receive reasonably equivalent value when the court concluded that C.V. Consultants "may not" have received reasonably equivalent value. But by voiding the transfer at the same time, the trial court effectively required Cowell to establish that he *did* pay reasonably equivalent value for the property. Ellen Equipment bore the burden of proof, and the trial court acknowledged that Ellen Equipment failed to carry that burden. We therefore hold as a matter of law that Ellen Equipment failed to meet its burden to establish that Cowell did not pay reasonably equivalent value to C.V. Consultants for the property. *See DiMarco v. Presbyterian Healthcare Servs., Inc.*, 2007–NMCA–053, ¶ 12, 141 N.M. 735, 160 P.3d 916 (determining as a matter of law that the plaintiff failed to carry the burden of proof). As a result of our holding, the trial court's judgment, which ordered the sale of the property and disbursement of the proceeds to C.V. Consultants' creditors, must be reversed. *See Turner v. Les File Drywall, Inc.*, 117 N.M. 7, 9, 868 P.2d 652, 654 (1994) ("[T]he property of one man cannot be subjected to the payment of the debts of another." (internal quotation marks and citation omitted)).

## C. Insider Status

{21} Ellen Equipment also contends that the transfer of the property can be invalidated under Section 56–10–19(B) because Cowell was an insider to C.V. Consultants. Instead of specifically challenging the finding that Cowell was not an insider, Ellen Equipment merely reiterates the argument made to and rejected by the trial court. We conclude that the issue of whether there was substantial evidence to support the finding that Cowell was not an insider is waived

because Ellen Equipment failed to challenge specifically the finding of the trial court to the contrary. *See Blea*, 2005–NMSC–029, ¶ 22, 138 N.M. 348, 120 P.3d 430 ("Because [the p]laintiff did not properly attack specific findings with particularity, the findings will be deemed conclusive."); *Mayeux v. Winder*, 2006–NMCA–028, ¶ 33, 139 N.M. 235, 131 P.3d 85.

### D.  Cowell's Lien

{22} Ellen Equipment makes a number of challenges to the trial court's conclusions regarding Cowell's lien on the property, which include the following: (1) Cowell was not entitled to a lien on the property because he was an insider and not a good faith transferee; (2) even if Cowell were entitled to a lien, that lien should be inferior to Ellen Equipment's lien; and (3) Cowell should not be permitted to bid his lien at the foreclosure sale.  The trial court granted Cowell a lien on the property in order to compensate him for the loss of money that he paid on the mortgage after the transfer.  Because we hold that the conveyance was valid, Cowell is no longer entitled to a lien on the property, and we therefore need not reach Ellen Equipment's challenges to Cowell's lien.

### III.  CONCLUSION

{23} We affirm the trial court's determination that C.V. Consultants did not act with actual intent to hinder, delay, or defraud its creditors.  We reverse the trial court's determination that the transfer was voidable under the UFTA. We remand for vacation of that portion of the judgment setting aside the deed from C.V. Consultants to Cowell, ordering the sale of the property, distributing the proceeds from the sale to the creditors of C.V. Consultants, affording Cowell a lien on the property, and establishing the priority of C.V. Consultants' creditors, and for such further proceedings that may be necessary to implement this opinion.

{24} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and IRA ROBINSON, Judges.