This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**PREFERRED BUILDERS, S.W., INC.,**

     Plaintiff-Appellant,

v.                                      **NO.  29,326**

**ALI M. GHAFFARI, SR., individually,**
**BLUE AND RED BIRD CORPORATION, P.C.,**
**a New Mexico corporation, and**
**RENAISSANCE LABOR MANAGEMENT, INC.,**
**a New Mexico corporation,**

     Defendants-Appellees,

**RENAISSANCE LABOR MANAGEMENT, INC.**
**and LINDA R. GHAFFARI,**

     Third-Party Plaintiffs,

v.

**PREFERRED BUILDERS, S.W., INC.,**
**ROCKY BENARD, SARAH BENARD,**

     Third-Party Defendants,

**ALI M. GHAFFARI, SR.,**
**BLUE AND RED BIRD CORPORATION, P.C.,**
**and RENAISSANCE LABOR MANAGEMENT, INC.,**

     Plaintiffs,

v.

**SCOTTSDALE INSURANCE COMPANY,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy Lowe Hartley, District Judge**

Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

Mark S. Sweetman
Clovis, NM

for Appellees Ali M. Ghaffari, Sr., Linda R. Ghaffari,
Blue and Red Bird Corporation, P.C.,
and Renaissance Labor Management, Inc.

## MEMORANDUM OPINION

**FRY, Judge.**

Preferred Builders, S.W., Inc. filed a complaint in district court seeking $82,855.67 on an open account or, alternatively, damages in quantum meruit for mold remediation and construction work performed on a building located at 1501 West Seventh Street, Clovis, New Mexico. Renaissance Labor Management, Inc., Blue and Red Bird Corporation, P.C., Ali M. Ghaffari, Sr. and Linda R. Ghaffari (collectively, Defendants) filed a counter-complaint and third-party complaint against Preferred Builders (collectively, Plaintiff), Rocky Benard, and Sarah Benard seeking damages for the partial demolition of the building. Following a bench trial, the district court

2

entered judgment in favor of Defendants and awarded compensatory damages in the amount of $146,249.10.

On appeal, Preferred Builders claims that (1) Preferred Painters, S.W., Inc., a duly-licensed and incorporated business entity, was doing business under the trade name Preferred Builders and, therefore, the district court improperly held that Rocky and Sarah Benard were personally liable for the amount of the judgment under NMSA 1978, Section 53-18-9 (1967) and that Preferred Builders was prohibited from maintaining an action for compensation under NMSA 1978, Section 60-13-30 (1977); (2) the district court lacked jurisdiction over Rocky and Sarah Benard because they were not served with a copy of the third-party complaint and summons; (3) Preferred Builders substantially complied with the requirements of the Construction Industries Licensing Act (CILA), NMSA 1978, Sections 60-13-1 to -59 (1967, as amended through 2008) and, therefore, was not barred from maintaining an action for compensation; (4) the district court improperly found that Preferred Builders' alleged damages in the amount of $82,855.67 were unsupported by the evidence and "misstated to the point of actual fraud"; (5) Defendants failed to establish the amount of their damages with reasonable certainty; (6) the award of damages should be offset by the settlement proceeds that Defendants received from their insurance company and adjuster; and (7) the district court improperly denied Preferred Builders' motion

for a new trial because the award of damages was barred by the doctrine of collateral estoppel.

We conclude that Preferred Painters was doing business under the trade name Preferred Builders and, therefore, the district court improperly held that Rocky and Sarah Benard were jointly and severally liable for the amount of the judgment and that Section 60-13-30 prohibited an action for compensation. In light of our conclusion, we need not determine whether the district court properly exercised jurisdiction over Rocky and Sarah Benard, or whether Preferred Builders substantially complied with the licensing requirements of CILA. We reject Preferred Builders' claims regarding damages and conclude that the district court properly declined to offset the amount of the judgment by the settlement proceeds received by Defendants. Lastly, we hold that the district court properly denied Preferred Builders' motion for a new trial. Accordingly, we affirm in part and reverse in part.

**I.     BACKGROUND**

Renaissance is the owner of a building located at 1501 West Seventh Street, Clovis, New Mexico. Linda Ghaffari and her daughter are the sole shareholders of Renaissance. The building previously had been used as a nursing home facility known as the Buena Vista Retirement Center but, in October 2005 Dr. Ghaffari conducted his medical practice, which was operated by Blue and Red Bird, in the west wing of the building. Linda Ghaffari and Dr. Ghaffari are the sole shareholders of

Blue and Red Bird. The building was insured against damage or loss by Scottsdale Insurance Company (Scottsdale).

On October 5, 2005, a water pipe in the east wing of the building burst, saturating the carpets and the lower portions of the walls. Mold developed due to the continued presence of water. The damage was reported to Scottsdale, which dispatched Robert A. Farkas of Proclaims Adjustment Services to adjust the claim. Farkas requested an estimate for repairs from Preferred Builders, which is owned and operated by Rocky and Sarah Benard. On October 15, Preferred Builders submitted a bid in the amount of $82,855.67 for the restoration of the building.

Preferred Builders commenced work on the property and, on November 26 requested payment in the amount of $82,855.67. After no payment was received, Preferred Builders ceased work and filed a claim of lien on the property. Thereafter, Preferred Builders filed a civil complaint in district court against Renaissance, Blue and Red Bird, and Dr. Ghaffari, seeking to recover on an open account and requesting relief under the equitable doctrine of quantum meruit. In their answer to the complaint, Renaissance, Blue and Red Bird, and Dr. Ghaffari alleged that Preferred Builders was an unlicensed contractor, which was prohibited from collecting compensation under Section 61-13-30. Additionally, Renaissance and Linda Ghaffari filed a counter-complaint and third-party complaint against Plaintiffs, Scottsdale, and Farkas, seeking damages for the partial demolition of the east wing of the building.

Thereafter, the parties moved to consolidate the present action with *Ali M. Ghaffari, Sr., Blue and Red Bird Corporation, P.C., and Renaissance Labor Management, Inc. versus Scottsdale Insurance Company*, No. D-0905-CV-02006-0034, which "involve[d] issues of not only insurance coverage[,] but a claim by [Defendants] that an agent of [Scottsdale], [Farkas], authorized repair to [the] building." The district court granted the motion. The claims against Scottsdale and Farkas subsequently were settled for $112,500.[1]

On August 25 and 26, 2008, the district court held a bench trial on the remaining claims. The district court held that Preferred Builders was prohibited from filing a claim of lien under Section 60-13-30 because it was not a licensed New Mexico contractor or an incorporated business entity. Although Preferred Builders alleged that it was operating under the contractor's license granted to Preferred Painters, a duly-licensed and incorporated business entity owned and operated by Rocky and Sarah Benard, the court determined that CILA prohibits such an arrangement.

Alternatively, the court found that Preferred Builders' claim of $82,855.67 lacked evidentiary support because "much of the work claimed could not be established. Proof was so lacking, and often misstated to the point of actual fraud."

---

[1]Neither Scottsdale nor Farkas are parties to this appeal.

(Emphasis omitted.) The court found that the demolition "was unnecessary, unreasonable[,] and excessive" and was not authorized by Defendants, Scottsdale, or Farkas.

With respect to the counter-complaint and third-party complaint, the district court found that Defendants were entitled to $146,249.10 in damages. Because Rocky and Sarah Benard had "assumed to act as a corporation (Preferred Builders, S.W., Inc.) without authority to do so[,]" the court held that they were jointly and severally liable for the amount of the judgment under Section 53-18-9 ("All persons who assume to act as a corporation without authority to do so are jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."). The court further held that, pursuant to *McConal Aviation, Inc. v. Commercial Aviation Ins. Co.*, 110 N.M. 697, 700, 799 P.2d 133, 136 (1990), "[t]he benefits received from the settlement with [Scottsdale] and [Farkas] represent a recovery from a collateral source and may not be used to reduce the liability of [Preferred Builders], Sarah Benard[,] and Rocky Benard."

Preferred Builders moved for a new trial, arguing that "[t]he claimed damage to 'restore' the building in the amount of $146,249.10 is unreasonable and not supported by the . . . evidence." In support of its motion, Preferred Builders relied on the findings of fact in *Montoya v. Buena Vista Retirement Center*, No. D0905-CV-0200400202 (Sept. 23, 2004), in which the district court granted the Secretary of the

7

Department of Health's motion to place the Buena Vista Retirement Home under receivership. In that case, the district court found, in pertinent part, that "the roof was leaking which resulted in toxic black mold throughout the facility," and "[t]here were numerous leaks in the roof throughout the facility." Preferred Builders alleged that Defendants had suffered no damages because "at the time that [Preferred Builders] first set foot in the building[,] the building was without any value and could not be used as a nursing home[,] or any other beneficial use[,] because of the systemic problems throughout the building."

Following a hearing, the district court denied Preferred Builders' motion for a new trial. The district court noted that if Preferred Builders had "wanted [the c]ourt to consider the facts in the *Buena Vista* case, then it could have presented live testimony in support of those findings." The court concluded that the "the Findings of Fact in that case are not binding in this case" and that the award of damages was supported by "significant persuasive" evidence. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## II.     STANDARD OF REVIEW

"[W]e review findings of ultimate fact, whether by court or by jury, under the substantial evidence standard." *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 510, 817 P.2d 238, 244 (1991). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v.*

8

*Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). "We view the facts in the light most favorable to the decision below, and we resolve all conflicts and, importantly, indulge in all inferences to support that decision." *Ellen Equip. Corp. v. C.V. Consultants & Assocs, Inc.*, 2008-NMCA-057, ¶ 8, 144 N.M. 55, 183 P.3d 940 (alterations omitted) (internal quotation marks and citation omitted).

When a party challenges the district court's legal conclusions, we must determine whether the law was correctly applied to the facts. *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 117 N.M. 373, 375, 872 P.2d 346, 348 (1994). "We review questions of law de novo." *Kokoricha v. Estate of Keiner*, 2010-NMCA-053, ¶ 11, 148 N.M. 322, 236 P.3d 41.

## III.    DISCUSSION

### A.    Whether Preferred Painters Was Doing Business Under the Trade Name, Preferred Builders

Preferred Builders claims that Preferred Painters was doing business under the trade name, Preferred Builders, and, therefore, the district court improperly held that Rocky and Sarah Benard were jointly and severally liable for the amount of the judgment and that Preferred Builders was barred from maintaining an action for compensation. Defendants respond that the district court properly determined, both as a factual and legal matter, that Rocky and Sarah Benard, rather than Preferred Painters, were doing business under the trade name, Preferred Builders.

We begin our analysis with a brief review of the law governing trade names. "It seems to be universally recognized that a corporation may do business under an assumed name, or under a name differing from its true corporate name." *Spain Mgmt. Co. v. Packs' Auto Sales, Inc.*, 54 N.M. 64, 68, 213 P.2d 433, 435 (1950) (internal quotation marks and citation omitted). A trade name is merely descriptive of a person or corporation doing business under some other name and, therefore, it does not create a separate legal entity. 9A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 4994.50 (2008). Accordingly, "[a] suit by or against a corporation generally may be brought under the name in which it transacts business, including an assumed, fictitious or trade name." *Id.*

10

To determine whether Rocky and Sarah Benard individually, or Rocky and Sarah Benard on behalf of Preferred Painters, were operating under the trade name, Preferred Builders, we turn to our case law governing the manner in which corporations act. "A corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation." *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 437, 872 P.2d 852, 855 (1994); *see* UJI 13-409 NMRA. An act is within the scope or course of employment if it is "fairly and naturally incidental to the employer's business assigned to the employee, . . . done while the employee was engaged in the employer's business with the view of furthering the employer's interest[,] and did not arise entirely from some external, independent[,] and personal motive on the part of the employee." *Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 15, 145 N.M. 113, 194 P.3d 728 (quoting UJI 13-407 NMRA) (alterations in original).

The record reflects that Rocky and Sarah Benard owned and operated Preferred Painters, a duly-incorporated business entity, which held a general contractor's license under CILA. At trial, Rocky Benard testified that Preferred Painters operated under the trade name, Preferred Builders, to reflect the fact that it did more than just paint. He explained that Preferred Builders and Preferred Painters shared a telephone number, a fleet of vehicles, and a single bank account held in the name of Preferred

11

Painters. Additionally, Preferred Builders advertised in various telephone directories as a general contractor under the license number issued to Preferred Painters.

These facts admit of but one conclusion—that Preferred Painters was doing business under the trade name, Preferred Builders, in order to bolster its general contracting business. Because Rocky and Sarah Benard were acting in their official capacity as the officers of Preferred Painters, a duly-incorporated business entity, their actions and omissions must be attributed to the corporation.[2]

The district court held, however, that Preferred Painters was precluded from operating under the trade name, Preferred Builders, because CILA "prohibits such an arrangement." We recognize that CILA prohibits a general contractor from "acting in the capacity of a licensee under any other name than is set forth upon the license." Section 60-13-23(K); *see* NMAC 14.6.3.8(A)(3)(d) (2/1/06) (providing that a general contractor's license "authorize[s] only the entity as named on the license to engage in contracting and no licensee may engage in contracting using a name other than the

---

[2]We recognize that "an officer or director of a corporation acting within the scope of his corporate duties may be personally liable for a tort injuring a third party" if the officer directed, controlled, approved or ratified the activity that led to the injury. *Stinson v. Berry*, 1997-NMCA-076, ¶¶ 17, 20, 123 N.M. 482, 943 P.2d 129. However, Defendants did not seek to impose personal liability on Rocky and Sarah Benard for their corporate acts but, rather, argued in the district court and on appeal to this Court that "[t]he Benards assumed to act as a corporation without authority" and, therefore, "are deemed to have brought the suit personally" pursuant to Section 53-18-9. Accordingly, we do not reach the issue of personal liability under *Stinson* and its progeny.

12

name that is shown on the license issued to it"). However, a violation of this provision does not render a general contractor personally liable for the acts or omissions of a corporation under Section 53-18-9. Rather, it simply provides the basis for the imposition of certain internal administrative penalties, including, but not limited to, license suspension or revocation. *See* Section 60-13-23(K); *see also* Section 60-13-23.1 (granting the construction industries commission the authority to impose administrative penalties in certain dollar amounts); Section 60-13-53 (granting the construction industries commission the power to enforce CILA in the district court by injunction, mandamus, or any proper legal proceeding). Accordingly, the district court improperly held that Rocky and Sarah Benard were jointly and severally liable for the amount of the judgment under Section 53-18-9.

We next address whether Preferred Painters, doing business as Preferred Builders, was prohibited from maintaining an action for compensation under Section 60-13-30, which provides as follows:

> A. No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the [CILA] without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

> B. Any contractor operating without a license as required by the [CILA] shall have no right to file or claim any mechanic's lien as now provided by law.

Section 60-13-30 "protect[s] the public from incompetent and irresponsible builders [by operating] to bar unlicensed contractors' suits for compensation, even when they seek compensation for construction work fully and satisfactorily performed." *Romero v. Parker*, 2009-NMCA-047, ¶ 8, 146 N.M. 116, 207 P.3d 350 (internal quotation marks and citations omitted).

> In view of the severity of the sanctions and the forfeitures which could be involved, [the courts] are reluctant to construe the statute more broadly than necessary for the achievement of its purpose. The statute should not be transformed into an unwarranted shield for the avoidance of a just obligation.

*Peck v. Ives*, 84 N.M. 62, 66, 499 P.2d 684, 688 (1972) (adopting the doctrine of substantial compliance for a plaintiff who had a valid contractor's license at the time of contracting (internal quotation marks omitted)).

It is undisputed that Preferred Painters possessed a valid contractor's license during the relevant time period. Although Preferred Painters was doing business under the trade name, Preferred Builders, the use of a trade name does not create a separate legal entity. *Cf. Nickels v. Walker*, 74 N.M. 545, 549, 395 P.2d 679, 682 (1964) (holding that a partnership was prohibited from maintaining an action for compensation under Section 60-13-30 because "[t]he organization of a partnership creates a new legal entity which requires a license, even though one or more of the partners are licensed contractors" (emphasis omitted) (internal quotation marks and citation omitted)). Because Preferred Painters and Preferred Builders are the same

14

legal entity, and Preferred Painters was licensed in accordance with the requirements of CILA, we conclude that Preferred Painters, doing business as Preferred Builders, was not prohibited from maintaining an action for compensation under Section 60-13-30.

In light of the foregoing conclusions, we need not address whether the district court properly exercised jurisdiction over Rocky and Sarah Benard, or whether Preferred Painters, doing business as Preferred Builders,[3] was in substantial compliance with CILA.

**B.      Whether Preferred Builders' Alleged Damages Were Unsupported by the Evidence and Misstated to the Point of Actual Fraud**

Having concluded that Preferred Builders was not prohibited from maintaining an action for compensation under Section 60-13-30, we next address whether the district court properly found that Preferred Builders' alleged damages were unsupported by the evidence and misstated to the point of actual fraud. Preferred Builders claims that it did not have the burden to prove damages because this was a "bid job," rather than a "cost-plus job wherein the contractor charges his costs for the job plus a percentage over and above the costs." Additionally, Preferred Builders claims that the elements of fraud were absent because Defendants failed to prove an

---

[3]For ease of reference, we hereinafter refer to Preferred Painters, doing business as Preferred Builders, as "Preferred Builders."

15

intent to deceive or detrimental reliance. Defendants respond that, because Preferred Builders' bid was not accepted by Defendants, the amount of the bid does not define the amount of damages. Additionally, Defendants argue that the district court did not err in using the term fraud to characterize Preferred Builders' evidence of damages.

A "bid" is defined as "a written or oral offer to contract." Section 60-13-2(K). Although Preferred Builders offered to renovate the east wing of the building for a contract price of $82,855.67, the district court found that this offer was not accepted by Defendants. In the absence of a valid and binding contract, the contract price does not define the amount of damages. *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993) ("Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent."). We therefore reject Preferred Builders' argument that proof of damages was unnecessary "because [the job] was a 'bid job.'"

Although Preferred Builders presented some evidence in support of its claim of damages, the district court found this evidence to be "misstated to the point of actual fraud." The district court did not find Preferred Builders liable for the tort of fraud; it simply used the term fraud to express how incredible and unworthy of belief it found Preferred Builders' evidence with respect to damages to be. In a bench trial, "only the trial court is permitted to weigh the testimony, determine credibility, and reconcile inconsistent or contradictory statements." *Shaeffer v. Kelton*, 95 N.M. 182,

16

186, 619 P.2d 1226, 1230 (1980). On appeal, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 28, 146 N.M. 473, 212 P.3d 361 (internal quotation marks and citation omitted). Accordingly, we affirm the district court's factual finding.

**C.      Whether Defendants Proved Their Damages With Reasonable Certainty**

Preferred Builders claims that Defendants failed to prove the amount of their damages with reasonable certainty and, therefore, the district court improperly "awarded $146,249.10 on mere conjecture and despite the fact that an estimate for turning the east wing into a hotel was $70,889.61." Defendants respond that the award of damages was supported by substantial evidence.

"A party seeking to recover damages has the burden of proving the existence of injuries and resulting damage with reasonable certainty." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 25, 146 N.M. 853, 215 P.3d 791. Although an award of damages cannot be based on surmise, conjecture, or speculation, "the amount of damages need not be proven with mathematical certainty." *Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 447, 891 P.2d 1190, 1201 (1995). "A damage award which is reasonably certain, supported by substantial evidence, and not based on speculation, will be upheld on appeal."

*Ranchers Exploration & Dev. Corp. v. Miles*, 102 N.M. 387, 390, 696 P.2d 475, 478 (1985).

Defendants hired Brian McCalister of McCalister Construction to renovate and repair the east wing of the building. In support of their claim of damages, Defendants submitted the testimony of McCalister, as well as numerous invoices and receipts quantifying the cost of repair as $168,024.54. This amount included a contract price of $70,889.61 for the renovation of the east wing, a weekly $500 management fee paid to McCalister Construction, various goods and services not included within the contract price, and a $21,775.44 estimate for work completed by unlicensed handymen before McCalister Construction was hired. The district court found that the "estimate of 'prior' work lacks proof and cannot be awarded," but that the remainder of claimed damages "$168,024.54 minus $21,775.44 [equals] $146,249.10 is supported by a preponderance of the evidence." Accordingly, the district court awarded Defendants $146,249.10 in compensatory damages.

We conclude that the district court's award of damages was reasonably certain and supported by substantial evidence. *Cf. First Nat'l Bank in Albuquerque v. Sanchez,* 112 N.M. 317, 323, 815 P.2d 613, 619 (1991) (concluding that damages were speculative when the plaintiff simply provided estimates and made no effort to quantify the amount of damages). To the extent that Preferred Builders argues that the legal measure of damages was improper because the building was not restored to

18

its prior condition, we decline to address this claim because it was not preserved in the district court. *Andalucia Dev. Corp. v. City of Albuquerque*, 2010-NMCA-052, ¶ 25, 148 N.M. 277, 234 P.3d 929 ("Appellate courts will not consider issues that went unpreserved at the district court level."). Although Preferred Builders objected to the admission of Defendants' evidence regarding damages on the basis of relevancy, this evidentiary objection was insufficient to alert the district court to a legal dispute regarding the proper measure of damages. *Compare Ruiz v. Varan*, 110 N.M. 478, 481, 797 P.2d 267, 270 (1990) (noting that the measure of damages to real property generally is the difference between "the value of the property immediately before the occurrence and immediately after the occurrence" (quoting UJI 13-1819 NMRA)), *with Snider v. Town of Silver City*, 56 N.M. 603, 614, 247 P.2d 178, 185 (1952) (noting that "the measure of damages for injury to a building which is not destroyed is a sum sufficient to restore it to substantially the condition it was in prior to the injury where this can be done at a reasonable cost or for less than the depreciation in the value of the building as a result of the injury" (internal quotation marks and citation omitted)).

**D.     Whether the Prejudgment Settlement was a Collateral Source**

Preferred Builders claims that Defendants received a double recovery by obtaining a $112,500 settlement with Scottsdale and Farkas in addition to a $146,249.10 judgment against Preferred Builders and, therefore, the judgment must

be offset by the amount of the settlement. Defendants respond that the settlement proceeds were a collateral source under *McConal Aviation, Inc. v. Commercial Aviation, Ins. Co.*, 110 N.M. 697, 799 P.2d 133 (1990), because the district court found that Scottsdale, Farkas, and Preferred Builders were not joint tortfeasors.

"New Mexico does not allow duplication of damages or double recovery for injuries received." *Hale v. Basin Motor Co.*, 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990). However, "an exception is the collateral source rule," which "allows a plaintiff to recover his full losses from the responsible defendant, even though he may have recovered part of his losses from a collateral source." *McConal Aviation Inc.*, 110 N.M. at 700, 799 P.2d at 136. This is because the "collateral contribution necessarily benefits either the injured person or the wrongdoer" and "the purposes of the parties . . . are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted." *Id.* (internal quotation marks and citation omitted)). Additionally, the rule furthers "[t]he policy of New Mexico . . . favor[ing] amicable settlement of claims without litigation" by allowing the settling party "to enjoy a favorable settlement or [be] bound by a poor settlement." *Id.* at 700-01, 799 P.2d at 136-37. For these reasons, the collateral source rule is limited "to the prejudgment settlement of a claim involving neither a joint tortfeasor nor a joint obligor under a contract." *Sanchez v. Clayton*, 117 N.M. 761, 766, 877 P.2d 567, 572 (1994).

20

The district court expressly found that Preferred Builders "practically 'gutted' the east wing of the building" without prior "authorization or approval . . . from [Farkas] or [Scottsdale]." Because neither Scottsdale nor Farkas were found liable for Defendants' damages, they were not joint tortfeasors under the Uniform Contribution Among Tortfeasors Act. *See* NMSA 1978, Sections 41-3-1 to -8 (1947) (defining joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them"). Accordingly, the district court properly held that Defendants' prejudgment settlement with Scottsdale and Farkas "represent[s] a recovery from a collateral source."

Preferred Builders argues, however, that Defendants are bound by the admissions in their third-party complaint, which alleged that "[a]ll work done by [Preferred Builders] was done under the direction, authority[,] and control of [Scottsdale] and its agent [Farkas]." We reject this claim because joint tortfeasor status depends on the facts found by the trier of fact, rather than the allegations contained in a parties' complaint. In *McConal Aviation, Inc.*, the Supreme Court recognized that the settling defendants may be "found to be free of fault by the jury" and, therefore, may not be "tortfeasors, as they had committed no tort." 110 N.M. at 700, 799 P.2d at 136. Under such circumstances, "[t]he amounts paid by the settling defendants [are], in the legal sense, voluntary. They [are], in legal terminology,

21

collateral sources." *Id.* (internal quotation marks and citation omitted). Because the district court found that Scottsdale and Farkas were free of fault, Preferred Builders was not entitled to an offset in the amount of the prejudgment settlement.

**E.      Whether the District Court Improperly Denied Preferred Builders' Motion for a New Trial**

Lastly, Preferred Builders claims that the district court improperly denied its motion for a new trial because Defendants' cause of action was barred by the doctrine of collateral estoppel. The record reflects that Preferred Builders raised this claim for the first time in its motion for a new trial.[4] "Generally, a motion for a new trial cannot be used to preserve issues not otherwise raised during the proceedings." *Sandoval*, 2009-NMCA-095, ¶ 56; *see Goodloe v. Bookout*, 1999-NMCA-061, ¶ 13, 127 N.M. 327, 980 P.2d 652 ("Raising the matter in their motion for a new trial came too late; objections must be raised in time for the trial judge to correct the error to prevent prejudice."). "We require a party to object at trial and invoke a ruling from the trial court in order to alert the trial court to a claim of error so that it has an opportunity to correct any mistake." *State v. Pacheco*, 2007-NMSC-009, ¶ 7, 141 N.M. 340, 155

---

[4]We need not decide whether Preferred Builders was entitled to a new trial based on newly-discovered evidence because Preferred Builders did "not [ask] for a new trial on the basis of newly-discovered evidence. [That was] not the basis of" its motion. *See Pena v. Westland Dev. Co.*, 107 N.M. 560, 564, 761 P.2d 438, 442 (Ct. App. 1988) (listing the prerequisites for granting a motion for a new trial based on newly-discovered evidence).

22

P.3d 745 (internal quotation marks and citation omitted) (holding that an argument raised for the first time in the defendant's motion for a new trial was not preserved for appellate review); *see* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). Because Preferred Builders failed to preserve this claim for appellate review, we decline to address it.

## IV. CONCLUSION

We conclude that Preferred Painters, a duly-licensed and incorporated business entity, was doing business under the trade name, Preferred Builders. Accordingly, the district court improperly held that Rocky and Sarah Benard were jointly and severally liable for the amount of the judgment and that Preferred Builders was precluded as a matter of law from maintaining an action for compensation under Section 60-13-30. However, we affirm the judgment of the district court denying Preferred Builders' claim for damages and awarding Defendants damages in the amount of $146,249.10. Accordingly, we affirm in part and reverse in part.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**

24